**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        )
                                        )
**JOHN BREDA,**                         )
                                        )
             **Plaintiff,**             )
                                        )
        **v.**                          )        **Civil Action No. 15-13263-DJC**
                                        )
                                        )
**ROBERT A. McDONALD, Secretary,**      )
**United States Department of Veterans Affairs;** )
**WILFREDO CURIOSO, M.D.; SHARON**      )
**ROUNDS, M.D., and SATISH SHARMA, M.D.,** )
                                        )
             **Defendants.**            )
                                        )
                                        )
_____)

**MEMORANDUM AND ORDER**

**CASPER, J.**                                          **December 23, 2015**

**I.      Introduction**

        Plaintiff John Breda, M.D., ("Dr. Breda") has sued Robert A. McDonald, Secretary of the

U.S. Department of Veterans Affairs ("VA"), in his official capacity, Wilfredo Curioso, M.D.

("Dr. Curioso"), Sharon Rounds, M.D. ("Dr. Rounds"), and Satish Sharma, M.D. ("Dr. Sharma")

(collectively, "Defendants"), asserting claims relating to his termination.  D. 11.  The VA has

moved to dismiss certain claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  D. 7.  For the

reasons stated below, the Court ALLOWS the motion.

**II.     Standard of Review**

        On a motion to dismiss under Rule 12(b)(6), the Court must determine if the facts alleged

"plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d

50, 55 (1st Cir. 2012).  Reading the complaint "as a whole," the Court must conduct a two-step,

context-specific inquiry.  <u>García-Catalán v. United States</u>, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must distinguish the factual allegations from the conclusory legal allegations.  <u>Id.</u> Factual allegations are accepted as true, while conclusory legal allegations are not.  <u>Id.</u>  Second, the Court must determine whether the factual allegations support "the reasonable inference that the defendant is liable for the conduct alleged."  <u>Id.</u> (quoting <u>Haley v. City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011)) (internal quotation marks omitted).  In deciding the motion, the Court may consider "documents the authenticity of which are not disputed by the parties," "official public records" and "documents central to plaintiffs' claim . . . or sufficiently referred to in the complaint."  <u>Town of Barnstable v. O'Connor</u>, 786 F.3d 130, 141 n.12 (1st Cir. 2015) (quoting <u>Watterson v. Page</u>, 987 F.2d 1, 3-4 (1st Cir. 1993)) (internal quotation mark omitted).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "is subject to the same standard of review" as a motion to dismiss under Rule 12(b)(6).  <u>Castino v. Town of Great Barrington</u>, No. 13-cv-30057-KPN, 2013 WL 6383020, at *1 (D. Mass. Dec. 4, 2013).  Courts, however, may consider materials outside the pleadings to resolve jurisdiction.  <u>Gonzalez v. United States</u>, 284 F.3d 281, 288 (1st Cir. 2002).

## III.    Factual Background

This summary of facts is based upon the allegations in the amended complaint which the Court must accept as true for the purpose of resolving the motion to dismiss.  Dr. Breda is a Massachusetts resident licensed to practice medicine in the Commonwealth.  D. 11 ¶ 4.  From March 2010 until February 2015, Dr. Breda worked as a part-time emergency room physician at the VA's medical center ("Medical Center") in Providence, Rhode Island.  <u>Id.</u> ¶ 12.  For the first four years, Dr. Breda received annual evaluations that found his performance to be satisfactory or better.  <u>Id.</u> ¶ 16.

In or about May 2014, one or more nurses complained to the VA about Dr. Breda's performance.  Id. ¶ 23.  Dr. Breda alleges that the complaints were meritless and raised out of personal hostility.  Id. ¶ 24.  In response to the complaints, Dr. Curioso reviewed a few of Dr. Breda's cases and found fifteen alleged instances of practice shortcomings.  Id. ¶¶ 29-30.

In or about November 2014, Dr. Breda met with Drs. Curioso and Rounds and told them that the shortcomings were insubstantial and that some had been corrected immediately.  Id. ¶ 37. In or about December 2014, Dr. Breda proposed that the parties resolve the matter in an alternative dispute process.  Id. ¶ 38.  He also told Defendants that unless they amicably resolved the issues, he intended to resign.  Id. ¶ 42.  Defendants initially agreed to an alternative dispute process, but it never took place because the VA moved to terminate Dr. Breda.  Id. ¶¶ 43-44.

On January 7, 2015, Dr. Rounds sent a memorandum to Dr. MacKenzie recommending that the VA terminate Dr. Breda for deficient patient care, medical knowledge and interpersonal and communication skills.  D. 13 ¶ 14, D. 13-5.  Dr. MacKenzie agreed with the recommendation and sent Dr. Breda a letter dated February 3, 2015 stating that his employment would terminate effective February 13, 2015.  D. 11 ¶ 49, D. 15 ¶ 3, D. 15-1.  This letter was delivered on the morning of February 6, 2015.  D. 15 ¶ 3, D. 15-1.  One day later, Dr. Breda emailed Dr. Sharma a resignation letter dated February 1, 2015.  D. 15 ¶ 4, D. 15-2.  Dr. Breda stated that a signed copy of the resignation letter had been mailed.  D. 15 ¶ 4, D. 15-2.

On February 9, 2015, the Medical Center's medical executive committee decided that Dr. Breda demonstrated substandard care, professional misconduct and professional incompetence and voted to revoke his staff privileges.  D. 13 ¶ 15.  A day later, a VA human resources employee told Dr. Breda that the VA could not back date his resignation.  D. 15 ¶ 5, D. 15-3. The VA documented Dr. Breda's separation as a resignation in lieu of involuntary action,

effective February 7, 2015.  D. 15 ¶ 6, D. 15-4.  In late October 2015, the VA reported Dr.

Breda's resignation to the National Practitioner Data Bank ("NPDB").  D. 15 ¶ 17, D. 15-15, D.

16 ¶ 10, D. 16-6.

## IV.   Procedural History

Dr. Breda filed this lawsuit on September 1, 2015.  D. 1.  On October 23, 2015, the VA

moved to dismiss some of the claims.  D. 7.  In response to the motion to dismiss, on November

6, 2015, Dr. Breda filed an amended complaint that asserts the following claims:   failure to

afford due process under the U.S. Constitution (Count I); failure to afford due process under the

Administrative Procedure Act ("APA") (Count II); age discrimination in violation of the Age

Discrimination in Employment Act (Count III); disability discrimination in violation of the

Rehabilitation Act of 1973 (Count IV); retaliation in violation of Title VII of the Civil Rights Act

of 1964 (Count V); tortious interference (Count VI); breach of contract (Counts VII and VIII);

defamation (Count IX); and intentional and/or negligent infliction of emotional distress (Count

X).  D. 11.  Counts VI and X are against Drs. Sharma, Curioso and Rounds while all other claims

are against the VA.  Id.  Count IX is against all Defendants.  Id.  The VA asks the Court to

consider its motion to dismiss in regard to the amended complaint, D. 11.  D. 19 at 2.

On October 23, 2015, the VA filed a notice of substitution under 28 U.S.C. § 2679(d)(1),

replacing Drs. Sharma, Curioso and Rounds with the United States as the defendant for Counts

VI and IX because the U.S. Attorney certified that those doctors were acting within the scope of

their employment as federal employees.  D. 6, D. 6-1.  On October 28, 2015, Breda sought a

temporary restraining order and/or preliminary injunction, D. 9, which the Court later denied.  D.

22.  The Court heard the parties on the motion to dismiss on November 12, 2015, and took the

matter under advisement.  D. 18.

## V.     Discussion

### A.     Dr. Breda Fails to State a Claim for Due Process Regarding His Termination (Count I)

Count I alleges that Dr. Breda had a property interest in his job and that the VA deprived him of that property interest without due process because the VA "afforded him no meaningful opportunity to be heard" before his termination and "provided limited information concerning the reasons for his termination, no opportunity to question witnesses involved in the reasons for his termination, no opportunity to present arguments against his termination, nor any other elements of due process relating to his deprivation of his position."[1]  D. 11 ¶ 88.

The Civil Service Reform Act ("CSRA") provides "a comprehensive system for reviewing personnel action taken against federal employees."  Elgin v. Dep't of Treasury, __ U.S. __, 132 S. Ct. 2126, 2130 (2012) ("Elgin II") (quoting United States v. Fausto, 484 U.S. 439, 455 (1988)) (internal quotation marks omitted).  It prescribes "in great detail the protections and remedies applicable to" adverse personnel actions against federal employees, "including the availability of administrative and judicial review."  Fausto, 484 U.S. at 443.  Because of its framework, the CSRA "preempts federal employees' court claims alleging that personnel actions, including termination, violate the federal Constitution or state law."  Burns v. Johnson, 18 F. Supp. 3d 67, 76 (D. Mass. 2014).  Under First Circuit precedent, the CSRA preempts constitutional claims whether they seek damages or equitable relief.  Elgin v. U.S. Dep't of Treasury, 641 F.3d 6, 11 (1st Cir. 2011), aff'd sub nom. Elgin II, 132 S. Ct. 2126 (2012).

---

[1] Although Dr. Breda alleges that the VA violated only his federal due process rights, D. 11 ¶ 89, he also cites the Massachusetts and Rhode Island constitutions.  Id. ¶ 85.  In any case, the analysis is the same.  See, e.g., Wyrostek v. Nash, 984 F. Supp. 2d 22, 27 (D.R.I. 2013) (stating that due process analysis under the federal and Rhode Island constitutions is identical); Pollard v. Georgetown Sch. Dist., No. 14-cv-14043-DJC, 2015 WL 5545061, at *6 (D. Mass. Sept. 17, 2015) (stating that "[a]s a general proposition, the federal and Massachusetts standards for a procedural due process analysis are identical") (internal quotation marks and citation omitted).

Dr. Breda argues that because the VA appointed him under 38 U.S.C. § 7405 as a part-time physician, he is less protected under the CSRA than other federal employees and thus should be entitled to seek immediate judicial review.  D. 14 at 10.  Courts, however, have found that where a part-time VA physician like Dr. Breda brings claims related to personnel actions prohibited under the CSRA, "the CSRA remedial scheme—including preemption of other remedies—applies."  Mangano v. United States, 529 F.3d 1243, 1247 (9th Cir. 2008); see Yu v. U.S. Dep't of Veterans Affairs, 528 F. App'x 181, 184 (3d Cir. 2013) (noting that because "[t]he VA's decision to terminate Yu falls within the [CSRA's] definition of personnel actions," Yu's claims "ought to have been brought" under the CSRA, "which exclude federal court jurisdiction under the causes of action asserted in this case"); Graves v. Dep't of Veterans Affairs, No. 13-cv-14140, 2014 WL 4145403, at *5 (E.D. Mich. Aug. 20, 2014) (stating that "[i]f Plaintiffs' claims relate to acts that fall within § 2302's prohibited personnel practices, Plaintiffs are covered by the CSRA").

Dr. Breda's claim "that he was unfairly terminated falls squarely within the definition" of prohibited personnel actions under the CSRA.  Mangano, 529 F.3d at 1247.  Count I thus must be dismissed.  Berrios v. Dep't of Army, 884 F.2d 28, 30-31 (1st Cir. 1989) (concluding that the CSRA preempted the plaintiff's "entire district court action" in which he asserted that the defendants' failure to conduct a hearing before his removal violated his due process rights); Burns, 18 F. Supp. 3d at 76 (concluding that because of CSRA preemption, the plaintiff's claim that she was constructively discharged without due process of law in violation of the Massachusetts Declaration of Rights must be dismissed).  That Dr. Breda may lack a remedy after the administrative process works its course "is not an uninformative consequence of the [CSRA], but rather manifestation of a considered congressional judgment" that his claims should

have limited additional statutory and judicial review.  Fausto, 484 U.S. at 448; Roth v. United States, 952 F.2d 611, 615 (1st Cir. 1991) (stating that the plaintiff's "lamentations about the inadequacies of administrative relief under the CSRA to be an exercise in irrelevancy").

Even if the Court assumes that some form of judicial review may exist for Dr. Breda's constitutional claim despite the CSRA's bar, Irizarry v. United States, 427 F.3d 76, 78 & n.2 (1st Cir. 2005), the Court need not reach that question because Dr. Breda's due process claim is "not even colorable."  Pathak v. Dep't of Veterans Affairs, 274 F.3d 28, 33 (1st Cir. 2001).  For a procedural due process claim to succeed, the plaintiff "must identify a protected property or liberty interest."  Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 7 (1st Cir. 2005).  Dr. Breda alleges that he had a property interest in his job as a government employee.  D. 11 ¶ 84.  But at-will VA physicians appointed under 38 U.S.C. § 7405, like Dr. Breda, have no property interest in their medical privileges.  Tie Qian v. Shinseki, 747 F. Supp. 2d 1362, 1367-70 (S.D. Fla. 2010), aff'd sub nom. Tie Qian v. Sec'y, Dep't of Veterans Affairs, 432 F. App'x 808 (11th Cir. 2011); Woods v. Milner, 955 F.2d 436, 440 (6th Cir. 1992) (stating because "Woods has no property interest in a temporary appointment, her due process claim was properly dismissed").  Count I thus fails on its merits even if the CSRA is not Dr. Breda's exclusive remedy.

**B.      Dr. Breda Fails to State a Claim for Due Process under the APA (Count II)**

Count II alleges that Dr. Breda was entitled to due process under the APA before Defendants could submit a report about him to the NPDB. D. 11 ¶¶ 91-96.  Dr. Breda seeks injunctive relief.  Id.

Congress enacted the Healthcare Quality Improvement Act "to address the rising problem of medical malpractice and the ability of incompetent doctors to move between states without

having their prior practice records follow them." <u>Ming Wei Liu v. Bd. of Trustees of Univ. of Alabama</u>, 330 F. App'x 775, 779 (11th Cir. 2009). To that end, Congress created the NPDB, a national registry that "requires health care entities to report the following information upon accepting a physician's surrender of clinical privileges while under an investigation: the name of the physician involved; a description of the acts or omissions or other reasons for the action or, if known, for the surrender; and such other information respecting the circumstances of the action or surrender as the Secretary deems appropriate." <u>Id.</u> at 779 n.4 (quoting 42 U.S.C. § 11133(a)(3)) (internal quotation marks omitted). Congress also directed the U.S. Secretary of Health and Human Services ("HHS") to issue regulations on how parties may dispute the accuracy of information disclosed to the NPDB. 42 U.S.C. § 11136.

Under the applicable regulations, a party like Dr. Breda must first attempt to resolve the dispute with the reporting entity. 45 C.F.R. § 60.21(b)(3). If the reporting entity does not revise its report or does not respond within sixty days, the party may request that HHS review the report for accuracy. <u>Id.</u> After reviewing the report, HHS has several options. First, it may conclude that the report is accurate. <u>Id.</u> § 60.21(c)(2)(i). Second, it may conclude that the report is inaccurate and direct NPDB or the reporting entity to revise the report. <u>Id.</u> § 60.21(c)(2)(ii). Third, it may determine that the disputed issues are outside the scope of HHS's review. <u>Id.</u> § 60.21(c)(2)(iii). Under any of these options, HHS must include a brief statement and describe its decision. <u>Id.</u> Finally, HHS may conclude that the adverse action was not reportable and direct NPDB to void the report and issue appropriate notices. <u>Id.</u> § 60.21(c)(2)(iv).

"Under the APA, a party must obtain a 'final agency decision' prior to seeking judicial review of an agency action." <u>Commonwealth of Puerto Rico v. United States</u>, 490 F.3d 50, 69 (1st Cir. 2007) (quoting 5 U.S.C. § 704). Here, Dr. Breda has only just begun the administrative

process because the VA told Dr. Breda of its decision to report him to the NPDB in October 2015.  D. 8 at 6-7, D. 8-1.

Dr. Breda argues that he is entitled to pursue judicial review now because his appeal within the VA's internal system is futile.  D. 14 at 11-13, D. 21 at 4-5.  But Dr. Breda makes no argument why continuing the administrative process through to HHS is futile.  Instead, in analogous situations, courts have held that a party's failure to exhaust administrative remedies requires dismissing its APA claim.  See, e.g., Reynolds v. U.S. Dep't of Justice, 10 F. Supp. 3d 134, 143 (D.D.C. 2014) (dismissing the plaintiff's APA claims because HHS was in the midst of reviewing the propriety of the NPDB reports submitted by the Bureau of Prisons, the plaintiff's employer); Suleman v. Shinseki, No. 5:10-cv-355-FL, 2011 WL 1868941, at *2 (E.D.N.C. May 16, 2011) (adopting report and recommendation dismissing the lawsuit for lack of subject matter jurisdiction because the plaintiff had not exhausted administrative remedies before seeking an order enjoining the VA from sending a report to the NPDB); Menchaca v. Shineki, No. 10-cv-7, 2010 WL 252263, at *1 (E.D. Wis. Jan. 14, 2010) (denying a preliminary injunction restraining reporting information to the NPDB because a final agency decision had not yet occurred); Anbar v. Leahan, No. 97-cv-1138, 1998 WL 314691, at *8 (E.D. Pa. June 11, 1998) (stating that "because plaintiff has not exhausted his administrative remedies, this court lacks jurisdiction to provide injunctive relief" ordering the defendants to correct information they submitted to the NPDB).  Because Dr. Breda is currently pursuing his administrative remedies, the Court dismisses Count II without prejudice.

### C.    Dr. Breda Fails to State Breach of Contract Claims (Counts VII and VIII)

Count VII alleges that the VA breached its "contractual obligation to enforce [its] policies and regulations prohibiting hostile environments and harassment in workplaces [it]

control[s]" by "permitting, and/or failing to prevent or correct, an environment . . . that was hostile" to Dr. Breda's practice.  D. 11 ¶ 145.  Count VIII alleges that the VA breached his employment contract by "failing to implement and carry out [its] established procedures and policies for addressing the possible performance shortcomings" alleged against him.  Id. ¶ 151.

Dr. Breda seeks $150,000 in damages.  D. 11 at 39; see D. 1-2.  These claims must be dismissed because under 28 U.S.C. § 1491, the U.S. Court of Federal Claims has exclusive jurisdiction for breach of contract claims against the United States for over $10,000.  Charles v. Rice, 28 F.3d 1312, 1321 (1st Cir. 1994).

### D.    Dr. Breda Fails to State a Claim for Tortious Interference (Count VI) and Defamation (Count IX)

Count VI alleges that Drs. Sharma, Curioso and Rounds tortuously interfered with his employment relationship with the Medical Center by "uttering spurious and meritless allegations against [him] to representatives of the [VA], thereby inducing the [VA] to terminate [his] contract of employment without sufficient or proper cause."  D. 11 ¶ 138.  Count IX alleges that Defendants defamed him because they "caused to be published . . . reports alleging numerous errors of medical practice."  Id. ¶ 156.  The U.S. Attorney for the District of Massachusetts has certified that the three doctors were acting within the scope of their employment at the time these claims arose.  D. 6-1.  The Court thus deems these claims to be against the United States, which "shall be substituted as the party defendant."  28 U.S.C. § 2679(d)(1); see Véléz-Diaz v. Vega-Irizarry, 421 F.3d 71, 76 (1st Cir. 2005) (noting that under § 2679(d)(1), even though "the government's certification is subject to judicial review such that the individual agents might be later re-instated as defendants in this case," district courts must in the first instance substitute the United States as the defendant).

Because § 2679(d)(1) grants absolute immunity to federal employees for torts committed

within the scope of employment, <u>Aversa v. United States</u>, 99 F.3d 1200, 1207 (1st Cir. 1996), Dr. Breda challenges the government's certification.  D. 14 at 4-7.  Dr. Breda bears the burden to show that Drs. Sharma, Curioso and Rounds acted outside the scope of their employment, including "any facts needed to contradict the government's characterization of the conduct in dispute."  <u>Lyons v. Brown</u>, 158 F.3d 605, 610 (1st Cir. 1998).  "Where the movant contends that, even accepting the allegations of the complaint as true, the defendant acted within the scope of employment, the motion to substitute may be decided on the face of the complaint (akin to a motion to dismiss)."  <u>Davric Maine Corp. v. U.S. Postal Serv.</u>, 238 F.3d 58, 66 (1st Cir. 2001).

State law where the conduct occurred controls whether an employee was acting within the scope of his employment.  <u>Kelly v. United States</u>, 924 F.2d 355, 357 (1st Cir. 1991); <u>Nasuti v. Scannell</u>, 792 F.2d 264, 266 n.3 (1st Cir. 1986).  Rhode Island looks to the Restatement (Second) of Agency § 228 (1958).  <u>See</u> <u>Favorito v. Pannell</u>, 27 F.3d 716, 722 (1st Cir. 1994) (citing the Restatement while deciding *respondeat superior* liability under Rhode Island law); <u>Vargas Mfg. Co. v. Friedman</u>, 661 A.2d 48, 53 (R.I. 1995) (citing the Restatement).  Section 228 provides in part that conduct of a servant is within the scope of employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master."  Massachusetts also looks to Restatement (Second) of Agency § 228, so its cases are persuasive here.  <u>Lev v. Beverly Enterprises-Massachusetts, Inc.</u>, 457 Mass. 234, 238 (2010).

Even assuming Dr. Breda's allegations to be true, i.e., that Drs. Sharma, Curioso and Rounds disregarded proper evaluation procedures before deciding to terminate him, the Court agrees with the VA that his allegations do not show that his supervisors acted outside the scope of their employment.  Their conduct was still of a kind that they are employed to perform, there

is no allegation that their conduct occurred at some other place and time other than at the VA during work hours and they acted at least in part to serve the VA because complaints about Dr. Breda's competence initiated the termination process.  That Drs. Sharma, Curioso and Rounds "may have acted loutishly and/or overzealously" in pursuit of their desire to protect the VA's interests, by "allegedly defaming," "inflicting emotional distress" and "attempting improperly to procure his . . . termination" does not matter.  Chase v. U.S. Postal Serv., No. 12-cv-11182-DPW, 2013 WL 5948373, at *16 (D. Mass. Nov. 4, 2013); see Meyer v. Runyon, 869 F. Supp. 70, 80 (D. Mass. 1994) (holding that although the employee's conduct was "perhaps overzealous or one sided," he was immune because his conduct "were motivated, at least in part, to assist" the government).  Because Dr. Breda fails to carry his burden, the Court accepts the U.S. Attorney's certification and the United States replaces Drs. Sharma, Curioso and Rounds as the defendant for Counts VI and IX.

The Federal Tort Claim Act specifically bars claims for "libel, slander" and "interference with contract rights" against the United States.  28 U.S.C. § 2680(h).  Courts have interpreted these provisions to include defamation and tortious inference claims, so Counts VI and IX must be dismissed.  See, e.g., Davric, 238 F.3d at 64 (dismissing defamation and tortious interference claims); Strunk v. Odyssey Consulting Grp., Ltd., No. 10-cv-12174-DJC, 2011 WL 3567025, at *6 (D. Mass. Aug. 11, 2011) (dismissing tortious interference with advantageous relationships and contractual relations claim).

Counts VI and IX also must be dismissed for another reason.  "It is now beyond serious question that the CSRA preempts state-law challenges to prohibited personnel practices in the federal workplace."  Roth, 952 F.2d at 614.  Because these claims challenge his termination, the

CSRA dictates their dismissal.  <u>Berrios</u>, 884 F.2d at 32 (defamation claims preempted by the CSRA).

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss, D. 7. Counts I, VI and IX are dismissed with prejudice.  Count II is dismissed without prejudice. Counts VII and VIII are dismissed without prejudice so Dr. Breda may file them in the Federal Court of Claims.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge